Aaron F. Goldstein, J.
This is an application for an order of certification of the above person based upon the petition of James F. Collins^ M. D., Superintendent of the Meadowbrook Hospital, Nassau County, New York.
The subject is currently a patient in the psychiatric ward at said hospital at the request of the Family Court. He is a 10-year-old white male; the adopted child of John Doe and Mary Doe [the names being fictitious]; the adoptive parents refused to sign the petition for certification; they have, however, supplied *573 allegations to the effect that the patient was instrumental in starting nine fires; the adoptive parents have also volunteered the allegation that the child has run away from home on occasion; and that the child was responsible for the death of his dog by probing the dog with a stick and inadvertently causing injury to the visceral organs. Based on these allegations and their own observations and examination the psychiatrists of Meadow-brook Hospital have concluded that the child is suffering from a schizophrenic reaction to childhood, with the recommendation that he be certified to a State hospital for further care and treatment.
After conducting a plenary hearing, supplemented by an independent investigation of school background, involving all ramifications of the history of this child, this court is not sufficiently convinced that certification of this child to a restricted environment is conducive to the maximum physical, mental, emotional and social development and growth of this child.
This court is reluctant to decide contrary to the professional views of the psychiatrists in this case; however, their examination and conclusions are based solely on the allegations of the adoptive parents concerning the facts and circumstances surrounding the fires that this child was supposed to have started. The psychiatrists have labeled the child “ A fire setter ” based on these allegations; and have thus concluded that this child is in need of 24-hour supervision.
The independent investigation conducted by this court of school officials and authorities reveals uniformly that this child is of above average intelligence, and that his grades do not reflect his true ability because he lacks the incentive and motivation to work up to the full measure of his capacity. He exhibited an eagerness to be liked by others; who craved for affection and a degree of acceptance; his relationship with his contemporaries was normal; and he showed no signs of hostility or cruelty.
Physiologically the child is normal; he is possessed of an unusually high intelligence quotient; he has replied to queries of this court that he is specifically interested in science. This court has wrestled with its conscience, and cannot resolve that the best interest concerning the welfare of this child can be served by certification to Kings Park.
There is nothing abnormal about the behavior of this child that cannot be dissolved by the human catalyst of love and affection. One aspect of this proceeding that this court is unequivocally certain of and that shocks and perturbs the conscience of this court is the attitude of the adoptive parents *574 of this child. Their personal attitude and the family atmosphere they supplied on behalf of this child was rigid and punitive; completely devoid of any affectionate feelings that were conducive to the inculcation of a feeling of belonging and of being loved. Their attitude had the adverse affect of compelling this child to withdraw and sever contact with an unpleasant environment; the attitude of the adoptive parents caused this child to hallucinate in retrogressive stages, which compels the court to volunteer the recommendation that the adoption be abrogated with dispatch.
The adoptive parents have admitted under oath that they have had it with this child and they no longer desire his presence in their household. An unfortunate statement to fall upon the ears of this court, but ironically the most probative. The adoptive parents were not motivated by love in making the decision to adopt this child; they obviously felt conscience stricken due to the fact that this child resided with them for a period of six years and they were adequately compensated by the Welfare Department for subsistence. Having adopted the child and not receiving any further remuneration for the six months’ duration that has elapsed, their true nature manifested itself by the rigid and punitive atmosphere they provided for the child; the child felt the rejection and began to hallucinate. The child’s behavior evaluated by this court in this context is understandable; the allegations concerning the fires were obviously exaggerated; neither parent could agree as to number and circumstances; the evidence established that two fires may have been started by the child; but they were not of the type that can conclusively establish that this child has a compulsive and uncontrollable proclivity to start fires. These fires could very well be the product of an idle and curious mind. The intellectual potential of this child was allowed to remain dormant and unchallenged by two selfishly motivated individuals who did not have the intellectual capacity to stimulate and guide the potential of this child; the family background supplied by them was bereft of the educational qualities to channel and develop this child’s intellect; they failed themselves by failing to admit that this adoption has proven abortive; and the least harmful remedy would have been initially an application to the Surrogate to vacate the adoption. The circuitous manner selected by them would result in the retardation of an individual with a wealth of potential. This court will not be an instrument to the suppression of the balanced development and growth of this child’s potential in a whole *575 some environment, permeated with an atmosphere of love and affection and the human intangibles that mold a total personality.
It is the considered opinion of this court that certification of this child to a restricted environment would inhibit the total development of his personality and be detrimental to his welfare. The application is therefore denied in the hope that the Family ■Court places this child in a foster home, or private or public institution wherein he may freely develop by interaction with his contemporaries and possibly continue his public education, and at the same time receive the psychiatric care and guidance needed to assist this child to realistically adjust to his environment.