CAMERON MELVILLE *v.* JOSEPH SABBATINO ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 135894
AT NEW HAVEN

Memorandum filed October 5, 1973

*Walter D. Wagoner, Jr.,* of New Haven, for the plaintiff.

*Stephen Wizner,* of New Haven, pro se as guardian ad litem.

*John Q. Tilson* and *Eugene C. O'Leary,* of New Haven, for the named defendant.

*M. Mitchell Morse,* of New Haven, for the defendants Frank Melville et al.

BERDON, J. Cameron Melville, hereinafter referred to as the plaintiff, brought this application for a writ of habeas corpus against Charles W. Gardner,[1] director of the Yale Psychiatric Institute,

---

[1] Upon agreement of all parties, Charles W. Gardner was substituted for the original defendant, Joseph Sabbatino.

hereinafter referred to as the defendant. The plaintiff's parents were added as defendants in this matter upon the granting of their motion to intervene as such.

Yale Psychiatric Institute is a private hospital located in New Haven which provides long term psychiatric care and specializes in the treatment of adolescents. The plaintiff is seventeen years of age and has been a patient confined at the Yale Psychiatric Institute since he was fifteen years old. He was admitted upon the written request of his parents under a voluntary admission. The written request was entitled "Application for Admission To The Yale Psychiatric Institute." This application was dated January 18, 1972, was signed by the father of the plaintiff, and read as follows: "I the undersigned, do hereby apply for admission (for my son/ daughter) to the Yale Psychiatric Institute for observation and treatment in accordance with Section 17-187 of the General Statutes of the State of Connecticut, Revision of 1960."

The plaintiff acknowledges that he is in need of psychiatric therapy, but he desires to obtain the same on an out-patient basis. On August 18, 1973, the plaintiff gave to the defendant notice in writing of his desire to leave Yale Psychiatric Institute in ten days. The parents of the plaintiff objected to his release because they and the physicians at Yale Psychiatric Institute felt he needed additional treatment in a structured environment. The defendant refused to release the plaintiff at the expiration of the ten-day period. This application for a writ of habeas corpus was brought by the plaintiff to obtain his release.

Counsel for the parties agreed that the court should follow the orderly procedure of first determining whether the plaintiff was entitled to release

from confinement at Yale Psychiatric Institute upon his own demand under proceedings outlined in subsection (a) of § 17-187 of the General Statutes. If not, the court would then hear evidence, including medical testimony, to determine whether the confinement is necessary and legal.

First, it must be noted, and all parties agree, that the constitutional safeguard of due process as guaranteed by the fourteenth amendment to the constitution of the United States must be afforded to the plaintiff, even if he is an unemancipated minor. *In re Gault,* 387 U.S. 1. "[L]ike Gault, and of utmost importance, we have a situation in which the liberty of an individual is at stake, and we think the reasoning in Gault emphatically applies. It matters not whether the proceedings be labeled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration — whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feebleminded or mental incompetent — which commands observance of the constitutional safeguards of due process." *Heryford* v. *Parker,* 396 F.2d 393, 396.

The defendant and the parents claim that because the plaintiff is a minor the parents' decision as to the child's welfare is controlling. Since the child was admitted at the request of the parents, it is their position that in order for the plaintiff to be released the parents must request his release or he must have reached his majority. The defendant and the parents suggest that the reasonableness and legality of the parents' decision can be constitutionally tested under the procedure set forth in §§ 17-200 and 17-201 of the General Statutes.

Although it is not controlling in this decision, the court feels compelled to comment on §§ 17-200 and

17-201 of the General Statutes. The appointment of a commission under § 17-200 to inquire whether a person is "unjustly deprived of his liberty by being detained or confined in any hospital for mental illness" apparently had its origin in the lunacy commissions of early ages. The statute does not require notice and an opportunity for the patient to be heard. It provides in part that "[s]uch commission need not summon the party claimed to be unjustly confined before it, but shall have one or more private interviews with him." The procedures suggested and dictated by the statute are so violative of the basic constitutional guarantees of due process that it shocks the conscience of modern jurisprudence. *In re Gault,* supra; see *Lessard* v. *Schmidt,* 349 F. Sup. 1078. Section 17-201 makes it clear that writs of habeas corpus are available to persons confined in a hospital for mental illness. Its main thrust is to furnish a procedure to test the legality of a commitment made by a court of probate.

There is no question that as a general proposition when a dispute arises between parents and an unemancipated minor the parents' decision as to the child's welfare is controlling. *Draus* v. *International Silver Co.,* 105 Conn. 415, 419. "Parental power probably cannot be defined except as a residue of all power not lodged elsewhere by the law. . . . Much authority of this sort supports the general proposition that except where there is some authoritatively expressed public policy to the contrary, parental power extends to all areas of a child's life." Kleinfeld, "The Balance of Power Among Infants, Their Parents and The State," 4 Family L.Q. 410, 413.

Although the authority of the parent is generally controlling, this does not mean, as indicated above, that such authority is unlimited. For example, parents could not compel a minor to have an abor-

tion; *Matter of Smith,* 16 Md. App. 209; parents could not compel their child to accept their attorney in proceedings initiated by them for commitment of the child to a mental hospital: *In re Sippy,* 97 A.2d 455 (D.C. Mun. Ct. App.); and parents could not place a child in a psychiatric school when such a structured environment was not necessary. *Matter of Anonymous,* 42 Misc. 2d 572 (N.Y.).

Turning to Connecticut law on the subject matter, all parties agree that the plaintiff can be confined at Yale Psychiatric Institute only if his admission and continued confinement are authorized by § 17-187 of the General Statutes.[2]

Certainly the statute by its express terms does not authorize voluntary admission of a minor child by his parent. Apparently, it has been the practice that psychiatric hospitals will accept as a voluntary admission a minor child acting through his parent under the statute, as was the case with the plaintiff.

The legislature in 1971 enacted Public Act No. 834, which is commonly known as "Patient's Bill of Rights." General Statutes §§ 17-206a to 17-206k. The act not only codifies certain constitutional guarantees which must be afforded to all patients in a hospital for the mentally disordered but provides that any minor of the age of sixteen or over can apply in writing for and be admitted to such a hos-

---

[2] "Sec. 17-187. VOLUNTARY ADMISSIONS. (a) Any hospital for mental illness may receive for observation and treatment any person who in writing requests to be received; but no such person shall be confined in any such hospital for mental illness for more than ten days after he has given notice in writing of his desire to leave, without commitment by some court of competent jurisdiction. (b) Any person desiring admission to a hospital for mental illness for care and treatment of a mental illness may be admitted as a patient without making formal or written application therefor if the superintendent deems such person clinically suitable for such admission, care and treatment, and any such patient may be free to leave such hospital at any time after admission."

pital as a voluntary patient. § 17-206a (d). It also formally gave to parents and legal guardians the right to apply in writing for the voluntary admission of their minor child or ward if under the age of sixteen. Ibid.[3] It is clearly apparent by the very terms of the "Patient's Bill of Rights" that it applies to all admissions and confinements under chapter 306 of the General Statutes, including § 17-187. This act must be read with all the statutory sections pertaining to commitment of mentally ill persons in order to constitute a uniform body of law.

It therefore logically follows that if one between the ages of sixteen and eighteen can admit himself into an institution as a voluntary patient, he has the same right to sign himself out under § 17-187 whether or not his parents originally initiated the admission.[4] For purposes of voluntary admission and release under § 17-187, the plaintiff in this case, being of the age of seventeen, has become emancipated. The "Patient's Bill of Rights" clearly lodges in a minor between the ages of sixteen and eighteen the power to demand on his own authority his release under such a voluntary admission.

*Matter of Smith,* 16 Md. App. 209, presents an issue identical in nature to the present case. The Maryland court, in holding that a parent could not compel her daughter to have an abortion, reasoned at page 225 as follows: "Under the conditions set

---

[3] "Sec. 17-206a. DEFINITIONS. . . . (d) 'voluntary patient' means any patient over sixteen years of age who applies in writing for and is admitted to a hospital for observation, diagnosis or treatment of a mental disorder or any patient under sixteen years of age whose parent or legal guardian applies in writing for such observation, diagnosis or treatment . . . ."

[4] Quaere whether, since the enactment of the "Patient's Bill of Rights," a parent can apply in writing for a voluntary commitment under § 17-187 of a minor child of the age of sixteen or over, or whether such an admission would require the application to be signed by the minor. This court is not called upon to determine the matter.

out, the minor, having the same capacity to consent as an adult, is emancipated from the control of the parents with respect to medical treatment within the contemplation of the statute. We think it follows that if a minor may consent to medical treatment as an adult upon seeking treatment or advice concerning pregnancy, the minor, and particularly a minor over 16 years of age, may not be forced, more than an adult, to accept treatment or advice concerning pregnancy. Consent cannot be the subject of compulsion; its existence depends upon the exercise of voluntary will of those from whom it is obtained; the one consenting has the right to forbid."

At this point it should be noted that no one has questioned the sincerity of the parents or that their sole purpose in demanding the continued confinement of the plaintiff is their concern for his welfare. But the parents' good intentions cannot set the standard for voluntary admission to and continued confinement at a psychiatric hospital, especially for a minor of the age of sixteen or over. Confinement at the Yale Psychiatric Institute, although for the purpose of medical treatment, does deprive the plaintiff of his liberty. It appears that the enactment of the "Patient's Bill of Rights" legislation has clearly dictated that minors of the ages of sixteen and over are to exercise for themselves the rights of a "voluntary patient," which include the right under subsection (a) of § 17-187 to leave the institution after giving appropriate notice.

If the plaintiff is in need of medical treatment in a structured environment such as Yale Psychiatric Institute, the parents have a remedy. The legislature clearly granted to courts of probate the jurisdiction to commit mentally ill persons. General Statutes § 17-177. Under such commitment proceedings before the Probate Court, a person alleged to

be mentally ill is given reasonable notice of the time and place of hearing, is guaranteed representation by counsel, and is guaranteed the rights of cross-examination of witnesses; General Statutes § 17-178; and the statutes further provide the right of appeal to any person aggrieved by an order of the Probate Court, "including any relative or friend." § 17-202. After providing for these procedural safeguards consistent with due process of law, the statute provides that the Probate Court shall make an order of commitment, if the "court finds that the person complained of is mentally ill and a fit subject for treatment in a hospital for mental illness or that he ought to be confined." § 17-178.

The plaintiff's parents and the defendant director of the Yale Psychiatric Institute should be given an opportunity to commence commitment proceedings before the Probate Court, if they deem it necessary. Therefore, judgment is rendered in favor of the plaintiff, execution to be suspended for a period of fourteen days from the date of this memorandum of decision.