IN RE: IMPRISONMENT OF MICHAEL H. LONG

No. 7510SC41

(Filed 21 May 1975)

1. **Parent and Child § 1— parent's control over child — no absolute right**

Courts regard with great deference the parent's right to bring up a child as he or she so chooses, yet this parental authority is not viewed as absolute.

2. **Constitutional Law § 23— minor committed to mental health care facility — applicability of due process requirements**

A fifteen year old child who never gave his consent to confinement in the forensic unit of Dorothea Dix Hospital was entitled to due

In re Long

process procedures guaranteed by the Fourteenth Amendment to the U. S. Constitution.

3. **Insane Persons § 1— commitment of minor to health care facility upon parent's request — inadequate protection of constitutional rights**

At present, Article 4 of G.S. 122 providing for voluntary commitment to a mental health care facility is constitutionally inadequate to protect the interest of a minor who is admitted at the parent's request.

4. **Constitutional Law § 23; Insane Persons § 1— commitment of minor upon parent's request— procedural due process required**

Commitment of a minor to a mental health care facility solely upon authorization of his mother was permissible procedure since the judicial deference afforded to parental authority along with the parent's interest in being able to seek immediate treatment and the policy of encouraging voluntary admissions outweigh any interest the minor may have in a pre-admission hearing; however, the continued confinement of a minor based on an admission without a prior hearing requires procedural safeguards consistent with the Due Process Clause, and such procedural due process should be afforded at the earliest possible time after admission.

Judge BRITT concurs in result.

ON *writ of certiorari* to review the order of *McLelland, Judge.* Order entered 23 August 1974 in Superior Court, WAKE County. Heard in the Court of Appeals on 21 March 1975.

By application for writ of habeas corpus, the minor, Michael H. Long, sought his release from the forensic unit of Dorothea Dix Hospital. The presiding judge of Wake County Superior Court issued a writ of habeas corpus commanding that the body of Michael H. Long be brought before him and setting a hearing for 26 July 1974. Counsel was appointed to represent Michael H. Long and the matter was continued until 23 August 1974. On 23 August 1974, Judge McLelland ordered the release of the petitioner Michael H. Long with the following:

"ORDER

This cause, coming on for hearing and being heard before the undersigned Presiding Judge of the Wake County Superior Court, State of North Carolina, upon Petitioner's application for Writ of Habeas Corpus. Appearing for and on behalf of the Petitioner was Jerry W. Leonard, court appointed counsel, and, appearing for the State of North Carolina was Parks H. Icenhour, Jr., Assistant Attorney General.

The parties, by and through counsel, in open Court stipulated as follows:

I. The Petitioner is fifteen (15) years of age and has been confined to the Forensic Unit at Dorothea Dix Hospital since the 2nd day of April, 1974;

II. Petitioner was admitted to Dorothea Dix under the 'voluntary admission' procedure set forth in NCGS § 122-56.5 which provides in pertinent part that for purposes of voluntary admission to a State facility for the treatment and evaluation of mental illness or inebriety, a parent, person standing in loco parentis, or guardian shall act for a minor;

III. The State of North Carolina asserts no justification for restraining the Petitioner, except for the authorization of Petitioner's mother;

IV. Petitioner has not been afforded the benefits of the involuntary admission procedures set forth in NCGS §§ 122-58 et seq.; and,

V. Petitioner has never consented to confinement at Dorothea Dix Hospital.

Upon the foregoing findings of fact, this Court concludes as a matter of law that Petitioner's continued confinement at Dorothea Dix Hospital is illegal, in that, he has been denied the safeguards provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See, IN RE GAULT, 387 US 1 (1967) and IN RE CONFINEMENT OF GRACIE MAE HAYES, 18 NC App 560 (1973).

WHEREFORE, it is

ORDERED, ADJUDGED, and DECREED that the Petitioner be immediately released from confinement by the State authorities.

This 23rd day of August 1974.

s/ D. M. MCLELLAND
JUDGE PRESIDING"

This Court allowed the State's petition for writ of certiorari to review the order of Judge McLelland.

*Attorney General Edmisten, by Assistant Attorney General Parks H. Icenhour, for the State.*

*Jerry W. Leonard, for petitioner appellee.*

MARTIN, Judge.

We have before us the serious question as to whether the admission and the continued confinement of Michael Long in a state hospital, pursuant to G.S. 122-56.5 and Article 4, Chapter 122 of the General Statutes, constitutes a deprivation of his liberty in violation of the Due Process Clause.

Effective 2 April 1974, the General Assembly of North Carolina rewrote Article 4 of Chapter 122 of the General Statutes concerning voluntary admissions to mental health facilities. G.S. 122-56.5 as thereby enacted reads:

> "In applying for admission to a treatment facility, in consenting to medical treatment when consent is required, in giving or receiving any legal notice, and in any other legal procedure under this Article, a parent, person standing in loco parentis, or guardian shall act for a minor, and a guardian or trustee shall act for a person adjudicated non compos mentis."

The initial and most obvious question is whether Michael Long comes within the protection of the Due Process Clause. The Fourteenth Amendment to the Constitution of the United States forbids the State to deprive any person of life, liberty, or property without due process of law. In recent years the rights of minors under the Federal Constitution have received increased attention. Referring to earlier cases, the Supreme Court of the United States in *In re Gault*, 387 U.S. 1, 18 L.Ed. 2d 527, 87 S.Ct. 1428 (1967), stated, "Accordingly, while these cases relate only to restricted aspects of the subject, they unmistakably indicate that, whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." Again in *Tinker v. Des Moines Community School Dist.*, 393 U.S. 503, 21 L.Ed. 2d 731, 89 S.Ct. 733 (1969), the Court recognized certain basic rights of children by saying, "Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State."

---

**In re Long**

---

. The State contends that *In Re Gault* is not applicable to the present case. Instead, it is argued that the minor, Michael Long, is subject completely to the control and supervision of his parent in the matter of receiving proper mental health treatment.

[1] Our courts regard with great deference the parent's right to bring up a child as he or she so chooses, yet this parental authority is not viewed as absolute. In *Spitzer v. Lewark*, 259 N.C. 50, 129 S.E. 2d 620 (1963), the Court said, "As a general rule at common law, and in this State, parents have the natural and legal right to the custody, companionship, control, and bringing up of their infant children, and the same being a natural and substantive right may not lightly be denied or interfered with by action of the courts. However, the right is not absolute, and it may be interfered with or denied, but only for the most substantial and sufficient reasons, and is subject to judicial control only when the interest and welfare of the children clearly require it. (Citations omitted.)"

Parental authority continues to enjoy this special deference, and rightfully so. "This primary role of the parents in the up-bringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin v. Yoder*, 406 U.S. 205, 32 L.Ed. 2d 15, 92 S.Ct. 1526 (1972).

However, we disagree with the State when it asserts that *In Re Gault* is not applicable to the present case. In *Heryford v. Parker*, 396 F. 2d 393 (10th Cir. 1968), the following observation is made: "[L]ike Gault, and of utmost importance, we have a situation in which liberty of an individual is at stake, and we think the reasoning in Gault emphatically applies. It matters not whether the proceedings be labeled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration—whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feeble-minded or mental incompetent—which commands observance of the constitutional safeguards of due process." *See Melville v. Sabbatino*, 30 Conn. Sup. 320, 313 A. 2d 886 (1973).

It must be kept in mind that where the interests of a minor conflict with those of the parent the courts have not deferred as readily to the judgment of the parent. *See Strunk v. Strunk*, 445 S.W. 2d 145, 35 A.L.R. 3d 683 (1969) ; *see, e.g., White v. Osborne*, 251 N.C. 56, 110 S.E. 2d 449 (1959). The parent's ad-

mission of a child to a treatment facility may result from a variety of factors, and it is possible that not all of these factors stem from a legitimate concern for the child. Ellis, *Volunteering Children: Parental Commitment of Minors to Mental Institutions*, 62 Calif. L.Rev. 840 (1974) [hereinafter referred to as Ellis, *Volunteering Children*].

[2] Having determined that Michael Long is entitled to the protection of due process procedures, we now consider the State's contention that Article 4 of Chapter 122 provides adequate safeguards against the unnecessary admission and confinement of a minor by his parent. First, it is argued that a voluntary patient must be discharged within 72 hours of his written request for release pursuant to G.S. 122-56.3. The procedure for voluntary admissions is set out in G.S. 122-56.3 as follows:

"Any person who believes himself to be in need of treatment for mental illness or inebriety may seek voluntary admission to a treatment facility by presenting himself for evaluation to the facility. No physician's statement is necessary, but a written application for evaluation or admission, signed by the person seeking admission, is required. The application shall acknowledge that the applicant may be held by the treatment facility for a period of 72 hours subsequent to any written request for release that he may make. At the time of application, the facility shall provide the applicant with the appropriate form for discharge. The application form shall be available at all times at all treatment facilities. However, no one shall be denied admission because application forms are not available. Any person voluntarily seeking admission to a treatment facility must be examined and evaluated by a qualified physician of the facility within 24 hours of presenting himself for admission. The evaluation shall determine whether the person is in need of treatment for mental illness or inebriety, or further psychiatric evaluation by the facility. If the evaluating physician or physicians determine that the person is not in need of treatment or further evaluation by the facility, or that the person will not be benefitted by the treatment available, the person shall not be accepted as a patient."

It is doubtful whether a minor admitted by his parent could secure his own release against the parent's wishes. G.S. 122-56.5 **provides** that in any legal procedure under Article 4 a parent

shall act for a minor. In addition, it could hardly be expected that a young, insecure child would readily stand up against hospital authorities and parents to assert such a right.

It is argued further that the examination of a patient within 24 hours as provided in G.S. 122-56.3 constitutes a sufficient safeguard against the improvident admission of a minor by his parent. For an excellent reply to this argument and a general discussion of the basic questions before us, see Ellis, *Volunteering Children, supra.* While recognizing the ability of those in the psychiatric profession to screen out many children who are unnecessarily admitted, the author points out several factors which mitigate against an effective screening process. At the initial examination there may be an understandable tendency to "over-diagnose." In other words, a psychiatrist may be predisposed to find illness rather than health at the first examination on the assumption that it is better to err on the side of caution. Also, where the parent admits a child for treatment, the examining doctor may quite naturally identify with the interest of the parent. If either of these happens, the doctor would be unable to act effectively as a screening agent at the initial stage of examination.

[3] At present, Article 4 of Chapter 122 is constitutionally inadequate to protect the interest of a minor who is admitted at the parent's request. "Short of bringing suit on constitutional grounds or seeking favorable statutory construction, the juvenile patient who seeks discharge has no recourse except to those who agreed to the original hospitalization—parents and hospital authorities. Here the child's position bears no resemblance to that of either the adult voluntary or involuntary patient; rather, it is uniquely restrictive." Ellis, *Volunteering Children, supra* at 847.

Returning to the present case, we reiterate that two distinct issues arise from the confinement of Michael Long—the admission procedure and the continued confinement of Michael Long based on that procedure. As mentioned earlier, we are of the opinion that Michael Long must be afforded the protection of due process at some stage. Such protective measures can be adapted to the peculiar needs of the minor. While there are certain minimum requirements to procedural due process, "the interpretation and application of the Due Process Clause are intensely practical matters and . . . 'the very nature of due process negates any concept of inflexible procedures universally

applicable to every imaginable situation.' *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 6 L.Ed. 2d 1230, 81 S.Ct. 1743 (1961)." *Goss v. Lopez*, 419 U.S. 565, 42 L.Ed. 2d 725, 95 S.Ct. 729 (1975).

[4] In view of this, we find the admission procedure used in the present case to be permissible. The judicial deference afforded to parental authority along with the parent's interest in being able to seek immediate treatment and the policy of encouraging voluntary admissions outweigh any interest the minor may have in pre-admission hearing. *But cf. Saville v. Treadway*, Civil No. 6969 (M.D. Tenn., 8 March 1974). However, the continued confinement of a minor based on that procedure requires procedural safeguards consistent with the Due Process Clause. Such procedural due process should be afforded at the earliest possible time after admission. We will not undertake to formulate a post-admission procedure designed to protect against the unnecessary confinement of a minor under Article 4 of Chapter 122. That is best left to the wisdom of the Legislature.

The order of the trial court releasing the minor Michael H. Long is

Affirmed.

Judge HEDRICK concurs.

Judge BRITT concurs in result.