ANONYMOUS *v.* SUPERINTENDENT OF HOSPITAL ET AL.
(1977–2)*

SUPERIOR COURT

NARUK, J. The subject of this petition is a fourteen-year-old deaf-mute who is a patient at a state mental hospital. He was placed there as a "voluntary" patient, under the provisions of General Statutes § 17-206a (d), by the commissioner of welfare. He had been committed to the commissioner's custody by the Juvenile Court as an uncared-for child.

Two legal actions were brought in the plaintiff's behalf and were consolidated for purposes of trial because of the similarity of the issues involved in each case. The first is a habeas corpus proceeding which seeks the plaintiff's release from the hospital unless he is granted a hearing in the Juvenile Court

---

\* Thus entitled, in view of General Statutes § 17-70 (b) and Practice Book § 405.

on the question of whether his continued confinement at the hospital is an appropriate placement for him and is in his best interest. The second action seeks an injunction and an order of mandamus requiring the commissioner of welfare "to perform his statutory obligation to provide such care and attention to [the plaintiff's] needs as will best promote his physical, intellectual and emotional growth and well-being."

The evidence revealed that the plaintiff was first brought to the hospital because his father could not control him at home. After one month, he was sent home at his father's request and, subsequently, was readmitted to a school for the deaf where he had previously been a student. He was readmitted to the hospital after being out approximately three weeks. Because it was felt that the plaintiff would be better off in an institution where sign language, as well as psychological help, would be available to him, he was later placed in an out-of-state institute of mental studies. The cost at that institution was borne by the Connecticut welfare department. Several months after his placement in the out-of-state facility, he was adjudicated an "uncared-for" child by the Juvenile Court and was committed to the custody of the commissioner of welfare. Over a year later he was returned to Connecticut and admitted to the state mental hospital on a voluntary basis by his guardian, the commissioner of welfare. His removal from the out-of-state institution had been previously requested by that institution because he was no longer progressing there. Although some other placement was sought for him by his case worker, none could be found. Consequently, he was returned to the state mental hospital for lack of a better place. At present, he is a patient on a locked adult ward, although he goes to school in the children's unit from 9 a.m. to 3 p.m. A locked adult

ward is used for those patients fourteen years of age or older who cannot be trusted in an open setting.

The testimony of the hospital staff was that the hospital is the only placement available for the plaintiff because no school east of the Mississippi will or can cope with his behavior. The problem is that there are very few institutions available for the treatment of emotionally disturbed children who also are unfortunate enough to be deaf-mutes. Clearly, the plaintiff is getting the benefit of the adolescent program and the other facilities that are available to him at the hospital. That the situation is not an ideal one for a deaf-mute is undisputed. It is also patently clear, however, that the treatment is the best that is available in Connecticut.

## I

The plaintiff claims that the defendant welfare commissioner may not place a child committed to his custody in a state mental hospital without obtaining a prior court order for that commitment. The statutes provide two procedures pursuant to which a child can be committed to a state mental hospital. General Statutes § 17-178 deals with involuntary commitments of all mentally ill persons, including children. It requires a probate court hearing and it contains detailed provisions dealing with notice, testimony and the right to counsel. General Statutes § 17-187 deals with voluntary admissions. Section 17-206a (d) defines a "voluntary patient" as "any patient under sixteen years of age whose parent or legal guardian applies in writing for such observation, diagnosis or treatment." Section 17-62 (d) of the General Statutes provides that when a child is committed to the commissioner of welfare, the commissioner shall be the guardian of that child. The power of a guardian to apply for the voluntary commitment of a child, the plaintiff claims, is limited

in the case of the welfare commissioner by the provisions of General Statutes § 17-39. Specifically, the argument is that the commissioner's power to consent to the voluntary admission of a minor ward of his to a mental hospital for an indefinite period is more restricted than that of a natural parent since § 17-39 requires a court petition before the commissioner can commit a minor ward to a "child-caring" institution. Under § 17-39, prior judicial approval is required before the welfare commissioner can place any of his wards in a child-caring institution other than a foster home.

Under established rules of statutory construction, statutes on the same subject should be construed in a manner which harmonizes the language so as to make one consistent body of law. *Cicala* v. *Administrator,* 161 Conn. 362, 365; *Hurlbut* v. *Lemelin,* 155 Conn. 68, 74. Thus, where general and specific statutory provisions deal with the same question, the more specific provision is generally held to prevail in areas where the two statutes overlap. *Meriden* v. *Board of Tax Review,* 161 Conn. 396, 401–402; *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 110. Applying that principle to the present situation can only lead one to the conclusion that § 17-39 places upon the welfare commissioner a legal duty to obtain prior judicial approval before making a non-foster home placement of a child committed to his custody under § 17-62 (d). Any other interpretation of those statutes would raise substantial constitutional questions of due process where the commitment is to a mental institution for an indefinite period of time. Cf. *Jackson* v. *Indiana,* 406 U.S. 715; *Heryford* v. *Parker,* 396 F.2d 393 (10th Cir.); *Mayock* v. *Martin,* 157 Conn. 56; *Melville* v. *Sabbatino,* 30 Conn. Sup. 320. Further, the United States Supreme Court has made clear that the parens patriae nature of proceedings involving minors does

not supersede or obviate the need for due process. *Goss* v. *Lopez,* 419 U.S. 565. Cf. *McKeiver* v. *Pennsylvania,* 403 U.S. 528; *In re Winship,* 397 U.S. 358; *In re Gault,* 387 U.S. 1; *Kent* v. *United States,* 383 U.S. 541.

In light of the court's findings and conclusions in the habeas corpus action, it is hereby ordered that the petitioner be discharged from custody unless the welfare commissioner, within thirty days from the filing of this memorandum of decision, institutes proceedings in the Juvenile Court for an order of commitment in accordance with the terms of this decision.

## II

The injunctive and mandamus action brought by the petitioner is rendered moot by the first part of this opinion and, therefore, is dismissed. The court would, however, point out that, if a decision on the merits were required, this action would be dismissed on the ground that the actions sought to be compelled are discretionary and not ministerial, and, consequently, not subject to a mandamus action. *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 414; *Huggins* v. *Mulvey,* 160 Conn. 559, 560; *Ballas* v. *Woodin,* 155 Conn. 283, 284.

Judgment may enter, accordingly, in each file.