IN THE MATTER OF MARY LOUISE SALEM
IN THE MATTER OF CLYDE McWHIRTER
IN THE MATTER OF LEON MILES
IN THE MATTER OF AUDREY HOLT

Nos. 7626DC278, 7626DC279

7626DC280, 7626DC281

(Filed 6 October 1976)

1. **Insane Persons § 1— involuntary commitment statutes — constitutionality**

     G.S. 122-58.1 *et seq.,* N. C.'s involuntary commitment statutes, are not unconstitutionally vague because they require that a person's imminent danger to himself or others be shown by "clear, cogent and convincing evidence" rather than by the "commission of overt acts."

2. **Insane Persons § 1— involuntary commitment proceedings — evidence improperly allowed — harmless error**

     The trial court in four involuntary commitment proceedings did not abuse its discretion in considering respondents' prior hospitalizations, though it was error to admit evidence of prior voluntary admissions in disregard of G.S. 122-56.6; however, this error was harmless when there was other competent evidence to support the commitment.

**3. Insane Persons § 1— involuntary commitment — imminent danger of respondents — no clear, cogent, convincing evidence**

> The trial court in two involuntary commitment proceedings erred in determining that respondents were imminently dangerous to themselves or others, since evidence that one respondent appeared "mentally unable [to] care for self & *probably* of imminent danger to self," and evidence that the other respondent appeared "unable to cope with daily living" did not amount to clear, cogent and convincing evidence of imminent danger.

APPEAL by respondents from *Black, Judge.* Judgments entered 7 November 1975 in District Court, MECKLENBURG County. Heard in the Court of Appeals 24 August 1976.

This appeal consolidates four involuntary commitment proceedings heard in the District Court. Each appeal is from an order pursuant to G.S. 122-58.7 adjudging the respondent "mentally ill" and "imminently dangerous to himself or others" and committing respondents to a mental health facility.

In the case of Mary Louise Salem the court heard the testimony of two witnesses for the State and admitted the written diagnoses and evaluations of two qualified physicians who examined Salem pursuant to G.S. 122-58.6. Evidence tended to show that Salem required medication but had thrown it away, that she demanded sexual favors from her brother and that she violently attacked her brother causing injury to him and to herself. The diagnoses and evaluations of the physicians reported that respondent was physically filthy, obscene, incoherent and loud, that she threatened her brother, and that she had sometimes become violent without cause. The doctors diagnosed her condition as an acute and chronic psychotic state and concluded that she could be dangerous to herself and to others. The court adopted the physicians' reports as its findings of fact and, in addition, noted that previously Salem had been twice voluntarily admitted and three times involuntarily committed to a mental health hospital.

In the case of Audrey Holt the court heard one witness who testified that respondent was under medical supervision and on medication. Further, the witness testified that Holt stopped taking her medicine and that "whenever she begins to get off her medication . . . she is rather belligerent . . . and begins to use profanity against her mother and then she begins to push and shove." The witness also testified that Holt threatened to kill her mother, but the time when this threat occurred

was sometime after 1970 and not within the two months preceding the hearing. The witness also testified that Holt was unemployed but received income from the Social Security Administration. The court also admitted two physicians' reports, one of which included the allegations of Holt's family that she was violent and hostile toward her mother. The doctors diagnosed her condition as paranoid schizophrenia. One doctor reiterated that she was very paranoid. The court incorporated the physicians' statements as its findings of fact, and noted that Holt had on four previous occasions been admitted to a hospital for the mentally ill.

In the case of Clyde McWhirter no witnesses appeared. The evidence consisted of two physicians reports similar to those introduced in the other hearings. One report described McWhirter as cooperative and well mannered but confused, talkative, and impaired in his judgment and reasoning. The other physician noted that McWhirter was old, confused and lacking in judgment and control, but that he also was friendly and put up a pleasant joking front. The doctor concluded that McWhirter "appears mentally unable [to] care for self & probably of imminent danger to self." Both doctors identified McWhirter's condition as chronic brain syndrome. The District Court adopted these reports as its findings of fact. In addition the court noted seven prior instances of voluntary admission to hospitals.

In the case of Leon Miles doctors' reports were admitted which said that Miles was disoriented, confused and irrational but well behaved. Further, the reports said he was apathetic, unwilling to work, vaguely hostile and paranoid toward everyone. One doctor definitely diagnosed the condition as schizophrenia. The other doctor was less certain, writing only "Acute & Chronic Psychotic state? Schizophrenia?" Once again, the judge incorporated the findings of the doctors as his own and noted three prior voluntary admissions.

*Attorney General Edmisten, by Associate Attorney Isaac T. Avery III, for the State.*

*Assistant Public Defender James Fitzgerald for Clyde McWhirter, Leon Miles, Audrey Holt and Mary Louise Salem, respondent appellants.*

ARNOLD, Judge.

Under the statute as it existed prior to June 1974 a person could be involuntarily committed when determined "by reason

of the commission of overt acts [that] the person is violent and of imminent danger to himself or others, or is gravely disabled." [G.S. 122-58.6(a) (1973)] The present statute provides,

> "To support a commitment order, the court is required to find by clear, cogent and convincing evidence, that the respondent is mentally ill or inebriate, and imminently dangerous to himself or others." G.S. 122-58.7(i).

[1] Respondents assert the unconstitutionality of North Carolina's involuntary commitment statutes, G.S. 122-58.1 et seq. The difference in the present law and the old is that the requirement of "overt acts" under the former law has been replaced by a requirement of "clear, cogent and convincing evidence." Respondents argue that the definitions of "mental illness" and "inebriety" found in G.S. 122-36 are vague and arbitrary unless read in conjunction with a requirement that "imminent danger" be shown or evidenced by some "overt act."

In support of their position that some overt act is required in order for an involuntary commitment to be constitutional respondents cite *Lessard v. Schmidt,* 349 F. Supp. 1078 (1972). That case holds that "imminent danger," as used in Wisconsin's involuntary commitment act, implicitly requires "a finding of a recent overt act, attempt or threat to do substantial harm to oneself or another," and without making such findings there can be no involuntary commitment.

G.S. 122-58.2 provides that the definition of mental illness under Chap. 122, Art. 5A means "mental illness" as defined in G.S. 122-36(d), which is as follows:

> "The words 'mental illness' shall mean an illness which so lessens the capacity of the person to use his customary self-control, judgment, and discretion in the conduct of his affairs, and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance, or control. The words 'mentally ill' shall mean a person with a mental illness."

The definition of mental illness in G.S. 122-36(d) is certainly capable of being understood and objectively applied with the help of medical experts. In a recent case attacking the constitutionality of the statutory procedure for sterilization of mentally ill persons our Supreme Court held that "mental illness" as defined by G.S. 35-1.1 was not vague and arbitrary.

*In re Moore,* 289 N.C. 95, 221 S.E. 2d 307 (1976). The definition contained in G.S. 35-1.1 is virtually the same definition contained in G.S. 122-36(d).

The words "imminently dangerous" simply mean that a person poses a danger to himself or others in the immediate future. An overt act may be clear, cogent and convincing evidence which will support a finding of imminent danger, but we cannot agree that there must be an overt act to establish imminent dangerousness.

We hold that G.S. 122-58.1 et seq., and the related definition of mental illness, is not unconstitutionally vague.

[2] Respondents next contend that the trial court abused its discretion by indiscriminately considering their prior hospitalizations. We find no abuse of discretion. The State, however, concedes that it was error to admit evidence of prior voluntary admissions in disregard to G.S. 122-56.6, but contends that the error is harmless where there is other competent evidence to support the commitment. We agree.

[3] We now consider respondent's assignments of error to the court's finding of mental illness and imminent danger to self or others. Respondents McWhirter and Miles argue that there is no evidence to support this finding.

The district court must make separate and distinct findings of (1) mental illness and/or inebriacy and (2) imminent danger to self or others. We see no problem in the cases before us relating to the finding of mental illness. There is clear, cogent and convincing evidence of mental illness in the case of McWhirter and in the case of Miles. However, we agree with both respondents' contentions that there is not clear, cogent and convincing evidence to support a finding of imminent danger.

In the case of Clyde McWhirter the only evidence tending to show dangerousness was provided by a doctor who indicated that McWhirter "appears mentally unable [to] care for self & *probably* of imminent danger to self." [Emphasis added.] Such evidence is not clear, cogent and convincing.

In the case of Leon Miles the doctor's affidavit stated that Miles "appears unable to cope with daily living." Again the evidence fails to present clear, cogent and convincing evidence of imminent danger.

· Respondents Holt and Salem set out no reasons or arguments in support of their assignments of error to the court's findings of mental illness and imminent danger. These assignments of error are therefore taken as abandoned. Rule 28(b)(3), Rules of Practice in the Court of Appeals. *Higgins v. Builders and Finance, Inc.*, 20 N.C. App. 1, 200 S.E. 2d 397 (1973).

As to respondents McWhirter and Miles the judgment is vacated. As to respondents Holt and Salem the judgment is affirmed.

Affirmed in part and vacated in part.

Chief Judge BROCK and Judge PARKER concur.