IN THE MATTER OF: BERTHA J. DOTY

No. 7821DC407

(Filed 3 October 1978)

Insane Persons § 1.2— involuntary commitment—imminent danger—need for constant care

The trial court in an involuntary commitment proceeding erred in finding that respondent was imminently dangerous to herself or others where the evidence showed only that respondent was completely unable to care for herself and needed nursing home or similar care. G.S. 122-58.1, -58.7, -58.8(b).

APPEAL by respondent from *Allen (Claude W.), Judge.* Involuntary commitment order entered 5 January 1978 in District Court, GRANVILLE County. Transferred to Forsyth County following hearing in accordance with directions from the Administrative Office of the Courts. Heard in the Court of Appeals 30 August 1978.

Bertha Doty, the respondent, has been hospitalized at John Umstead Hospital since 1966. At the request of the Acting Chief of Medical Services a rehearing for involuntary commitment was held on 5 January 1978 to determine whether Ms. Doty should be committed to Umstead Hospital for an additional 365 days.

Dr. Barker testified for the State that Ms. Doty suffered from a progressive neurological deterioration which could be labeled an organic brain syndrome. This condition is irremediable, and because of it Ms. Doty is "completely unable to care for herself" and needs nursing home or similar care. Dr. Barker testified that Ms. Doty receives no psychiatric treatment, but does receive treatment for her medical problems.

Ms. Doty testified in her own behalf only to say that she wanted to leave.

An order of involuntary commitment for 365 days was entered on 5 January 1978, and from this order respondent appeals.

*Attorney General Edmisten, by Associate Attorney Christopher S. Crosby, for the State.*

*Susan Freya Olive, counsel for respondent appellant.*

ARNOLD, Judge.

The North Carolina involuntary commitment statute requires two findings before a person may be committed against his will: (1) that the person is mentally ill or inebriate, and (2) that he is imminently dangerous to himself or others. N.C.G.S. §§ 122-58.1, -58.7(i), and -58.8(b). The statutory definition of mental illness, N.C.G.S. §§ 122-58.2(2) and -36(d), is broadly written and may well encompass Bertha Doty's condition, even though the record shows no specific evidence of her symptoms. The doctor testified only that Ms. Doty was unable to care for herself, and that she was a complete nursing care problem.

It is the second finding, however, that requires us to reverse the court's ruling. By requiring that the person be found *imminently* dangerous to himself or others, the legislature has made it clear that involuntary commitment is not for all those who are mentally ill, or even for those whose mental illness may make it necessary for them to have custodial care. Although Bertha Doty may come within the statutory definition of "dangerous to himself," N.C.G.S. 122-58.2(1), two recent decisions from this Court make clear that there has been no showing here of imminent danger.

In *In re Carter*, 25 N.C. App. 442, 213 S.E. 2d 409 (1975), the trial court had found the respondent mentally ill and unable to take care of her personal needs for food, clothing and shelter. This Court held:

> There is . . . no finding sufficient to satisfy the [requirement of imminent danger]. If [the trial court's finding] be considered sufficient to show a determination by the court that respondent was dangerous to herself as defined in G.S. 122-58.2(1), yet there was no finding that the danger was imminent.

*Id.* at 445, 213 S.E. 2d at 411. And although the trial court had found as fact that the respondent suffered from violent temper, serious lack of insight, insufficient appreciation of the needs of others, and suspiciousness, this Court held that the evidence would not have supported a finding of imminent danger.

Again in *In re Salem*, 31 N.C. App. 57, 228 S.E. 2d 649 (1976), this Court has indicated that the requirement of imminent danger will be taken seriously.

> The words 'imminently dangerous' simply mean that a person poses a danger to himself or others in the immediate future.
>
> \*    \*    \*    \*
>
> In the case of [the first respondent] the only evidence tending to show dangerousness was provided by a doctor who indicated that [respondent] 'appears mentally unable [to] care for self & *probably* of imminent danger to self.' . . . Such evidence is not clear, cogent and convincing.
>
> In the case of [the second respondent] the doctor's affidavit stated that [respondent] 'appears unable to cope with daily living.' Again the evidence fails to present clear, cogent and convincing evidence of imminent danger.

*Id.* at 61, 228 S.E. 2d at 652.

There is less evidence in this case than in either of those cited that Bertha Doty is of imminent danger to herself. The requirements for involuntary commitment are not met. Even if they were met at some time during Ms. Doty's hospitalization, the statute makes clear the legislature's intent in such a situation: "[C]ommitted persons will be discharged as soon as a less restrictive mode of treatment is appropriate." N.C.G.S. § 122-58.1. The uncontroverted testimony of the doctor for the State is that Ms. Doty "needs nursing home or similar care."

The United States Supreme Court has recognized that "the mere presence of mental illness does not disqualify a person from perferring his home to the comforts of an institution. . . . [I]ncarceration is rarely if ever a necessary condition for raising the living standards of those capable of surviving safely in freedom, on their own or with the help of family or friends."

*O'Connor v. Donaldson,* 422 U.S. 563, 575, 45 L.Ed. 2d 396, 407, 95 S.Ct. 2486, 2493-94 (1975). There are two humanitarian purposes for involuntary commitment: temporary withdrawal from society of those who may be dangerous, and treatment. *French v. Blackburn,* 428 F. Supp. 1351 (M.D.N.C. 1977). Neither of those is being served here.

The judgment of the trial court is

Reversed.

Chief Judge BROCK and Judge CLARK concur.