IN THE MATTER OF LYNETTE H., A MINOR CHILD

No. 8710DC1255

(Filed 31 May 1988)

**Insane Persons § 13— statute defining mental illness as applied to minor—statute unconstitutionally vague**

N.C.G.S. § 122C-3(21)(ii), which defines mental illness when applied to a minor, is unconstitutionally vague and cannot stand, and the statute is not capable of uniform understanding and application even with the help of medical experts.

---

In re Lynette H.

---

APPEAL by petitioner from *Leonard, Judge*. Order entered 6 August 1987, *nunc pro tunc*, 28 January 1987 in District Court, WAKE County. Heard in the Court of Appeals 4 May 1988.

On 24 January 1987, respondent's (Lynette H.) parents requested her admission to Holly Hill Hospital under G.S. 122C-221. A qualified physician examined respondent and determined that she was suffering from mental illness and was in need of treatment. Respondent was then admitted to Holly Hill Hospital.

On 27 January 1987, a hearing was held as required by G.S. 122C-223. Evidence presented at the hearing tended to show the following facts.

Dr. Thomas Cornwall testified that he was respondent's attending psychiatrist at Holly Hill Hospital and that, in his opinion, respondent suffered from a mental illness. He identified the mental illness as "Atypical Depression." Dr. Cornwall stated in support of his opinion that 1) respondent was depressed at home and at school and had left home to live with an older male; 2) as a result of her depression, respondent had not attended school regularly and did not have any friends at school; 3) respondent used alcohol and marijuana to cope with her depression; 4) respondent had been worried that she might be pregnant and talked about "going out with guys" in the middle of the night; 5) respondent told him that she "got real upset and out of control" and started throwing things when she found out her boyfriend no longer wanted to marry her; 6) respondent's judgment was very poor; and 7) respondent could benefit from treatment at Holly Hill Hospital but was an inappropriate candidate for out-patient treatment because she would not cooperate in any reasonable way.

Respondent's mother testified that respondent violated curfew, associated with older males (ages 19 to 21), and on one occasion she and respondent's father had to pick respondent up from the police station after respondent and a friend had been picked up by a man and taken to a motel. She also testified that respondent "walked the streets" and accepted rides from strangers. She further testified that respondent had run away from home three times from 23 December 1986 to 6 January 1987 and had spent one week living with an older male in his apartment. She finally stated that she was concerned that respondent was suicidal based on letters found in respondent's room.

Respondent testified that she was 16 years old and could "handle" her depression "pretty well." She stated that she hoped to graduate from high school, attend college and join a police force. She admitted that she was unable in the past to abide by a contract she had made with her parents regarding house rules, but stated that she would like to return home, "make a few compromises" and "be friends" with her parents. Respondent also stated that she was willing to attend out-patient therapy.

The trial court found that the evidence did not support a finding of mental illness under G.S. 122C-3(21)(ii) and entered a verbal order discharging respondent from Holly Hill Hospital. In a written order entered 6 August 1987, *nunc pro tunc*, 28 January 1987, Judge Leonard found the following facts:

1) Upon attaining the age of 16 years, Respondent learned she was no longer subject to parental authority as enforced through the Juvenile Courts by "undisciplined" and "delinquency" proceedings.

2) She then began to fail to adhere to rules established by her parents.

   a) Respondent became sexually promiscious [sic] to the point that she cohabitated briefly with her boyfriend.

   b) Respondent has used marijuana on several occasions.

3) Respondent is depressed by the deterioration of her relationships with her parents and her boyfriend.

4) Respondent is still enrolled in high school and there is no indication her attendance or grades have fallen off.

5) Respondent and her parents have allowed the parent-child relationship to deteriorate to a point that they cannot effectively communicate with their child.

6) Respondent does not desire to be institutionalized in a mental treatment facility.

The trial judge further found that "[e]vidence tending to establish suicidal idealizations was received but found not to be credible."

Judge Leonard concluded that G.S. 122C-3(21)(ii) which defines "mental illness" as applied to minors "is unconstitutionally

vague" and that respondent did not fall within the criteria for involuntary commitment as an adult. From the order of the trial court, petitioner appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Gerald M. Swartzberg, for petitioner appellant.*

*Elisabeth P. Clary for respondent appellee.*

ARNOLD, Judge.

In North Carolina a minor is entitled to the constitutional safeguards of due process in a civil commitment hearing. *In re Long*, 25 N.C. App. 702, 214 S.E. 2d 626, *cert. denied*, 288 N.C. 241, 217 S.E. 2d 665 (1975). This Court stated in *Long*:

> It matters not whether the proceedings be labeled "civil" or "criminal" or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration—whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feeble-minded or mental incompetent —which commands observance of the constitutional safeguards of due process.

*Id.* at 706, 214 S.E. 2d at 628 (quoting *Heryford v. Parker*, 396 F. 2d 393 (10th Cir. 1968) ).

Vagueness and uncertainty obviously may void a statute. *In re Burrus*, 275 N.C. 517, 169 S.E. 2d 879 (1969). "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Id.* at 531, 169 S.E. 2d at 888. A statute should prescribe boundaries sufficiently distinct for judges to interpret and administer it uniformly. *See United States v. Petrillo*, 332 U.S. 1 (1946).

G.S. 122C-3(21)(ii) defines mental illness when applied to a minor as

> [a] mental condition, other than mental retardation alone, that so lessens or impairs the youth's capacity either to develop or exercise age appropriate or age adequate self-control, judgment, or initiative in the conduct of his activities and

social relationships as to make it necessary or advisable for him to be under treatment, care, supervision, guidance, or control.

A finding of mental illness under the statute justifies commitment of a minor to a mental health facility even though the minor objects. G.S. 122C-3(21)(ii) can be read so that any minor who fails to exercise "age appropriate initiative" in his "activities and social relationships" so as to make it "advisable" for him to receive "guidance" is by definition mentally ill. Under this standard, it appears that very few individuals escape mental illness during their teenage years.

The definition of mental illness in G.S. 122C-3(21)(ii) is clearly susceptible to different interpretations and arbitrary applications. The excessive use of the conjunction "or" compounds the uncertainty inherent in the statute, and the terms "age appropriate" and "age adequate" are subject to varying explanations. The statute fails to prescribe an ascertainable standard to enable judges to interpret it and administer it uniformly. Accordingly, G.S. 122C-3(21)(ii) is unconstitutionally vague and cannot stand.

Petitioners argue that G.S. 122C-3(21)(ii) is capable of being understood and objectively applied with the help of medical experts. Petitioners rely on *In re Salem*, 31 N.C. App. 57, 228 S.E. 2d 649 (1976), in support of their argument. In *Salem* this Court upheld the constitutionality of the following definition of mental illness:

The words "mental illness" shall mean an illness which so lessens the capacity of the person to use his customary self-control, judgment, and discretion in the conduct of his affairs, and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance, or control. G.S. 122-36(d).

The Court stated in *Salem* that the definition of mental illness contained in G.S. 122-36(d) was capable of being understood and applied with the help of medical experts.

The definition of mental illness construed in *Salem* differs from the definition of mental illness at issue in the present case. The terms "age appropriate" and "age adequate" are not found in the statute construed in *Salem*. The conjunction "or" is not as extensively used in the *Salem* statute to indicate alternative stand-

ards for determining the existence of mental illness. Moreover, the definition of mental illness in *Salem* required an additional finding of imminent danger to self or others in order to result in involuntary commitment.

The definition of mental illness in G.S. 122C-3(21)(ii) is unconstitutionally vague and is not capable of uniform understanding and application even with the help of medical experts.

The trial court applied the adult standard for involuntary commitment under G.S. 122C-268(j) to respondent. G.S. 122C-268(j) states:

> To support an inpatient commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to himself or others or is mentally retarded and, because of an accompanying behavior disorder, is dangerous to others. The court shall record the facts that support its finding.

Respondent, the trial court found, did not fall within the criteria for involuntary commitment as an adult. The definition of mental illness as applied to an adult, found in G.S. 122C-3(21)(i), differs from the definition of mental illness as applied to a minor. Furthermore, the adult standard for involuntary commitment requires a finding of dangerousness to self or others.

The trial court properly applied the adult standard for involuntary commitment after finding G.S. 122C-3(21)(ii) void for vagueness. Evidence supports the trial court's findings of fact, and the facts support the conclusion that respondent could not be involuntarily committed to a mental health facility. *See In re Frick,* 49 N.C. App. 273, 271 S.E. 2d 84 (1980). The order of the trial court is

Affirmed.

Judges ORR and GREENE concur.