IN THE MATTER OF: WILLIAM HERNANDEZ, JR.

No. 7912DC995

(Filed 15 April 1980)

1. **Insane Persons § 1— custody order for involuntary commitment under emergency procedures**

   A magistrate's order, when read with an officer's affidavit which was incorporated by reference therein, was sufficient to meet requirements for a custody order for involuntary commitment of respondent pursuant to the emergency procedures of G.S. 122-58.18 for violent persons.

2. **Insane Persons § 1— petition for involuntary commitment—violent person—no personal observation of violent act by petitioner**

   An officer's petition for involuntary commitment of respondent pursuant to the emergency procedures for violent persons was not required to be dismissed because the officer did not personally observe the respondent in an act of violence but relied on information gained from others.

3. **Insane Persons § 1.2— involuntary commitment—imminent danger to others— sufficiency of evidence**

   There was clear, cogent and convincing evidence before the trial court to support the court's finding that respondent was "imminently dangerous" to others and its order of involuntary commitment of respondent where the evidence tended to show that respondent appeared at the military desk at Fort Bragg, identified himself as Jesus Christ, stated that he had been sent by the Pope to procure a permit to carry a weapon, requested an automatic weapon, and insisted that he was working as an undercover agent for the Criminal Investigative Division; a doctor found a knife with a blade approximately sixteen inches long in respondent's luggage; respondent told the doctor, "You would be surprised at how many people are frightened by that knife."; it was the doctor's expert opinion that respondent could injure someone if he found them to be, in respondent's words, "dispensable"; and

respondent testified that, if you cannot reason with an agent, "you shoot him on sight because he's dangerous" and that he would use a knife "for self-preservation once in a while."

APPEAL by respondent from *Bason, Judge*. Order signed 28 June 1979 in District Court, CUMBERLAND County. Heard in the Court of Appeals 18 March 1980.

This matter came on to be heard as a special proceeding upon a petition for involuntary commitment at Dorothea Dix Hospital, Wake County, pursuant to G.S. 122-58.18. The respondent appeared at the military police desk at Fort Bragg, identified himself as Jesus Christ, and stated that he had been sent by the Pope to procure a permit to carry a weapon. Respondent thereupon requested an automatic weapon and insisted that he was working as an undercover agent for the Criminal Investigative Division. An army investigator, at the instructions of his major, escorted the respondent to the Cumberland County Mental Health Center. After examination at the mental health center, the respondent was taken to the Cumberland County Law Enforcement Center, where a deputy sheriff, after consultation with respondent, signed the petition for involuntary commitment and the additional oath by a law enforcement officer as required by the emergency provisions of G.S. 122-58.18. Thereafter, a magistrate issued an emergency custody order, and the respondent was taken to Dorothea Dix Hospital on the same day. The matter came on for hearing, pursuant to G.S. 122-58.7, eight days later. At the close of the evidence and argument, the court made findings of fact and conclusions of law and signed and entered the order of involuntary commitment, committing the respondent to the hospital for a period of ninety days. The respondent excepted to the rulings of the court and appealed to this Court.

*Attorney General Edmisten, by Associate Attorney Steven F. Bryant and Leonard T. Jernigan Jr., for petitioner appellee.*

*Dorothy E. Thompson for respondent appellant.*

HILL, Judge.

The respondent argues that the trial judge erred by failing to dismiss the petition in this cause. Respondent contends such petition must include specific facts upon which the magistrate

may find by clear, cogent, and convincing evidence that the requisite criteria are present to justify the issuance of an emergency order.

The magistrate in this matter issued the custody order pursuant to the special emergency procedure of G.S. 122-58.18 which provides in part:

> When a person subject to commitment under the provisions of this Article is also violent and requires restraint, and delay in taking him to a qualified physician for examination would likely endanger life or property, a law-enforcement officer may take the person into custody and take him immediately before a magistrate or clerk. The law-enforcement officer shall execute the affidavit required by G.S. 122-58.3, and in addition shall swear that the respondent is violent and requires restraint, and that delay in taking the respondent to a qualified physician for an examination would endanger life or property.
>
> If the clerk or magistrate finds by *clear, cogent, and convincing evidence* that the facts stated in the affidavit are true, and that the respondent is in fact violent and requires restraint, and that delay in taking the respondent to a qualified physician for an examination would endanger life or property, he shall order the law-enforcement officer to take the respondent directly to a community or regional mental health facility designated for the custody and treatment of such persons under this Article. (Emphasis added.)

The affidavit to be executed by the law enforcement officer and referred to in the statute above is required by G.S. 122-58.3(a). That subsection provides that:

> (a) Any person who has knowledge of a mentally ill or inebriate person who is imminently dangerous to himself or others, or who is mentally retarded and, because of an accompanying behavior disorder, is imminently dangerous to others may appear before a clerk or assistant or deputy clerk of superior court or a magistrate of district court and execute an affidavit to this effect and petition the clerk or magistrate for issuance of an order to take the respondent into custody for examination by a qualified physician. The affidavit shall include the facts on which the affiant's opinion is based.

We note that the word "imminently" was deleted by amendment effective 1 October 1979.

This Court has held that the requirements of G.S. 122-58.3 must be followed diligently. *In Re Reed*, 39 N.C. App. 227, 249 S.E. 2d 864 (1978). Respondent contends that G.S. 122-58.18 was intended by the legislature to be used only in rare, carefully specified circumstances; and, since a patient's rights and liberties are more drastically curtailed than by the customary procedure set forth in G.S. 122-58.3, must be construed as narrowly as possible.

"It is a cardinal rule of statutory construction that the intent of the legislature controls the interpretation of statutes." (Citations omitted.) *State v. Williams*, 291 N.C. 442, 230 S.E. 2d 515 (1976). The statute under which the respondent was committed (G.S. 122-58.18) is entitled "Special emergency procedure for violent persons." It is not intended to be used indiscriminately and clearly defines the limited time and circumstances for such use.

G.S. 122-58.18 requires that the law enforcement officer who takes a violent person requiring restraint into custody must make an affidavit as required by G.S. 122-58.3. The affidavit must set out facts upon which the affiant's opinion is based. Such facts must be sufficient to establish to the affiant's satisfaction that the patient is imminently dangerous to himself or others. In addition, G.S. 122-58.18 requires the law enforcement officer to swear that the patient is violent, requires restraint and that delay in taking the patient to a qualified physician for an examination would endanger life or property. The clerk or magistrate must find by clear, cogent and convincing evidence that the facts contained in the affidavit are true; that the patient is in fact violent and requires restraint; and that delay or taking the patient to a qualified physician for an examination would endanger life or property.

[1] Respondent submits that there must be a mechanism for review of the magistrate's findings in order for the respondent's rights to be protected. An examination of the magistrate's order reveals that it is directed to any sheriff, deputy sheriff, police officer, or highway patrolman. The court found as fact that the proceeding was before the magistrate upon the petition of Deputy

Ronald Matthews; that the deputy took the respondent into custody pursuant to the special emergency procedure for violent persons; that *there are reasons to believe the facts alleged in the petition are true*; and that the respondent is probably mentally ill and imminently dangerous to himself or others. Hence, by reference, the magistrate incorporated into his custody order for involuntary commitment facts in the affidavit, and we must read the order and affidavit together.

The affidavit stated *inter alia* that the respondent was mentally ill and was imminently dangerous to himself or others; that the respondent went to the military police station at Fort Bragg, told the desk sergeant he was Jesus Christ and asked for credentials in that name and for a permit to carry a weapon. Respondent was taken to a mental health clinic at CFB Hospital. Dr. Morriss, the attending physician, recommended that the respondent not be released into his own custody and further said that the respondent needed medical attention. When we read the affidavit and the magistrate's order together, we find them to be sufficient to meet statutory requirements for involuntary commitment.

The forms are not models of legal draftsmanship. However, it must be remembered that magistrates for the most part are laymen, not lawyers, and must act in such circumstances as are before their court with compassion and in a humane manner—but at the same time, expeditiously, this being an emergency situation. Legal niceties must not be expected in all such instances.

Nevertheless, the legislature has provided further protection for the respondent in circumstances such as the one before us by requiring that a hearing shall be held in district court within ten days of the day the respondent is taken into custody, at which time the legislature has made adequate provision for protection of the respondent's rights. We recognize that the respondent has rights, and our federal courts have held that the North Carolina 10-day custody period prior to a full adversary hearing does not constitute a denial of due process and the standard of proof required by our statutes is constitutional. *French v. Blackburn*, 428 F. Supp. 1351 (M.D.N.C. 1977), *affirmed* 61 L.Ed. 2d 869 (1979).

We find no merit in the respondent's first assignment of error.

[2] Respondent next contends the petition must be dismissed because the deputy sheriff who acted as petitioner had not personally observed the respondent in an act of violence. Such a reading of G.S. 122-58.18 is unduly restrictive. The statute requires that the petitioner be a law enforcement officer. Rarely are law enforcement officers witnesses to acts of violence. Their very presence is a deterrent. Most often they must act on information gained from others. The respondent was initially met by an army investigator who had made an investigation. The law enforcement officer, Mr. Matthews, had every right to rely on the statements made by Mr. Lorenzo, the initial investigator, as a part of his investigation. The situation is not novel. Physicians, likewise, may rely on the statements of others in an examination of a mental patient. This assignment of error is overruled.

[3] Respondent next contends there is insufficient competent evidence to find that respondent is *imminently dangerous to others*; that even assuming some evidence of imminent danger is present, the evidence is not "clear, cogent and convincing." Respondent, without stipulating to the finding of mental illness, concedes there is sufficient evidence to support the court's finding on that issue.

"The questions for our determination then become (1) whether the court's ultimate findings are indeed supported by the 'facts' which the court recorded in its order as supporting its findings, and (2) whether in any event there was competent evidence to support the court's findings." *In Re Hogan*, 32 N.C. App. 429, 433, 232 S.E. 2d 492 (1977).

In finding one to be "imminently" dangerous, it has been held that there is no requirement of an "overt act." *In Re Salem*, 31 N.C. App. 57, 228 S.E. 2d 649 (1976); *In Re Hogan, supra.* Commenting upon this rule, the Court stated in *In Re Ballard*, 34 N.C. App. 228, 229, 237 S.E. 2d 541 (1977), that:

The thrust of respondent's argument appears to be as follows: It is very difficult to predict potentially dangerous behavior. The Court should, therefore, require that any potentially dangerous behavior be evidenced by a recent overt act.

This Court has previously rejected respondent's argument.

Applying the above rules to the facts of this case, petitioner contends there was evidence upon which the trial judge properly concluded that respondent was "imminently" dangerous to others and that these facts were properly recorded in the trial judge's order.

Dr. Lenora Stephens testified that when she searched respondent's luggage she found a knife with a blade approximately sixteen inches in length. The respondent stated to Dr. Stephens, "You would be surprised at how many people are frightened by that knife." It has been held that concealing a potentially dangerous weapon is evidence of imminent danger. *In Re Ballard, supra.*

Dr. Stephens further testified that respondent had admitted seeking a permit to carry a gun in connection with his job as an undercover agent. Finally, it was Dr. Stephens' expert opinion that the respondent could injure someone if he found them to be, in respondent's words, "dispensable."

Mr. James Lorenzo testified that respondent was seeking to obtain the permit to carry a weapon on instructions from the Pope. Respondent also stated that he wanted an automatic weapon and that previously he had been in possession of an illegally concealed weapon.

In addition, during the respondent's own testimony, he stated in response to a question concerning what he would do if ordered to shoot someone that, if you cannot reason with an agent, "[y]ou shoot him on sight because he's dangerous." Respondent also said he would use a knife ". . . for self-preservation once in a while."

This Court concludes that there was clear, cogent and convincing evidence that respondent was imminently dangerous to others and that the trial judge properly recorded the facts to support the order.

Based on the reasons set out previously and the evidence, we conclude the judge did not err in signing the order of involuntary commitment.

The judgment of the trial judge is

Affirmed.

Judges PARKER and MARTIN (Harry C.) concur.