IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-27

Filed 15 October 2025

Mecklenburg County, No. 16CVD016819-590

JAMES HOWARD PELC, Plaintiff,

v.

MONICA ELIZABETH PHAM, Defendant.

Appeal by defendant from judgment entered 4 April 2024 by Judge Christy T. Mann in Mecklenburg County District Court. Heard in the Court of Appeals 24 September 2025.

*Sodoma Law, PC, by Amy Elizabeth Simpson, for the plaintiff-appellant.*

*Thurman, Wilson, Boutwell & Galvin, P.A., by John D. Boutwell, for the defendant-appellee.*

TYSON, Judge.

James Howard Pelc ("Father") appeals from order entered on 4 April 2024, which found him to be in civil contempt for failure to pay Monica Elizabeth Pham ("Mother") pursuant to a 3 May 2023 order entered on remand. We vacate the trial court's order and remand.

## I.    Background

This cause returns to this Court following a hearing on remand. *Pelc v. Pham* ("*Pelc I*"), 287 N.C. App. 427, 883 S.E.2d 634 (2023). Mother seeks to enforce and

collect on an order entered on 7 June 2021, which awarded her monetary damages

pursuant to a United States Citizenship and Immigration Services ("USCIS") Form

I-864 Affidavit of Support, equitable damages for Father's failure to repay a loan, and

attorney's fees incurred for Mother's Affidavit of Support claims. Although this case

has many common elements normally present in a domestic case and much of the

terminology is common to the terminology that often appears in domestic cases, the

issue presented is one of breach of contract, specifically the process by which one may

collect on a money judgement resulting from a breach of contract.

The facts and procedural history are set forth in this Court's prior opinion

regarding Father's appeal of that order:

> Father and Mother began a romantic relationship in
> Perth, Australia, and began cohabitating in 2007. The
> relationship evolved into a "de facto relationship" per
> Australian law, which is analogous to a common-law
> marriage. Mother and Father are parents of one minor son
> born on 26 June 2009. The parties resided in Australia
> until 2014, when they moved to the United States (U.S.).
>    Father holds dual citizenship in the U.S. and
> Australia. Mother holds dual citizenship in Australia and
> New Zealand. Their son is a U.S. and Australian citizen
> because Father is a U.S. citizen. At the time of trial, Father
> was 62 years old, and Mother was 50 years old.
>    Father desired to return to the U.S. in 2014 to be
> closer to his aging parents. Mother was reluctant, but she
> agreed to move "on a trial basis" to determine whether she
> would enjoy living in the U.S. Mother was required to
> obtain a Fiancée Visa prior to immigrating and entering
> the U.S. Mother and Father completed and signed a
> USCIS Form I-134, entitled "Intent to Marry," and
> confirmed their intent to marry within ninety days upon
> entry into the U.S. Mother and Father married on 21 July

2014 in the U.S.

For Mother to remain in the U.S., Father also signed and submitted a USCIS Form I-864, titled an "Affidavit of Support," on 7 August 2014. The Affidavit of Support allows the "intending immigrant [to] establish that he or she is not inadmissible to the United States as an alien likely to become a public charge" by requiring the future spouse to promise to financially support the alien.

The trial court found Father "represented that he was not working but had assets and income from his property from which to support [M]other" on the USCIS Form I-864. Father signed the USCIS Form I-864 Affidavit of Support, promising to maintain his alien wife, an Australian/New Zealand citizen, for her to lawfully remain in the United States for permanent residence.

The parties resided together in the U.S. with the minor son until they separated on 4 November 2016. Father failed to pay any support to Mother after the parties separated.

From November 2016 until April 2017, the parties "nested" with the minor son, meaning "Mother and Father would alternate weeks living in Father's residence with the minor child." The parties eventually stopped "nesting" with their son. The parties have maintained separate households since April 2017.

Neither Mother nor Father were employed for 2014 through 2017. Father has not maintained traditional employment since February 2014. Mother resigned from her job in Australia when she moved to the U.S., per Father's request. Mother, however, later secured a part-time employment during 2018 and a full-time position in 2019.

Prior to moving to the U.S., Father identified various properties located in different geographic areas. He intended to use one as the family home, and another to be used as a rental property to generate income. In May 2013, Father purchased residential property located in Charlotte. He also purchased property located in Suwanee, Georgia, in August 2013, which he hoped to rent.

Prior to closing on the property in Suwanee, Mother offered funds to Father to avoid financing the property

- 3 -

through a traditional loan and borrowing from a lender. Mother was to receive equity in the home for her investment, or alternatively, Father promised to re-pay Mother the interest she was obligated to pay on her o[w]n separate line of credit. Mother provided $110,000 Australian dollars ("AUD") to Father in two transactions on 11 and 12 June 2013, which Father subsequently transferred to a U.S. bank account and, upon conversion, received currency proceeds of $104,099 U.S. Dollars ("USD"). Father used those funds to partially purchase the property in Suwanee.

The trial court found that Mother "trusted Father" because of their personal relationship, and Mother considered the transaction as a "loan to Father and not a gift." The trial court also found Mother had relied upon Father's promises to re-pay the funds loaned from her line of credit and her reliance was reasonable.

Father paid Mother $4,071 towards the loan proceeds in 2013 and part of 2014, which amount equaled the interest accruing on Mother's line of credit. Father subsequently stopped paying Mother in 2014. In one of Father's responses to a motion before the trial, he "admitted that Mother had loaned him the money, admitted that he had paid for a time on the loan, and admitted that it had not been paid in full." Father sold the Suwanee property for a profit in 2018. Father did not re-pay Mother any of the proceeds from the sale nor make any additional payments on the loan.

Following the dissolution of Mother's and Father's relationship in late 2016, Father initiated this litigation after Mother had threatened to take their minor son back to Australia. He sought permanent child custody, temporary emergency custody, and, in the alternative, a motion for temporary parenting arrangement. The litigation has sadly proceeded in a protracted, expensive, contentious, and a highly-conflicted manner since it began.

Mother counterclaimed for a decree of divorce, child custody, child support, attorney's fees, recovery of personal property, monetary damages resulting from breach of contract for support, specific performance of the contract for support, equitable distribution, interim allocation,

> postseparation support, alimony, unjust enrichment, constructive trust, and resulting trust.
>
> Mother voluntarily dismissed her post-separation support, alimony, and temporary and permanent child support claims without prejudice when trial began. The remaining claims were tried between 9-11 December 2019. No written order was entered until eighteen months later on 7 June 2021.
>
> The trial court found and concluded: (1) Father owed Mother damages for failing to meet his contractual obligation under the USCIS Form I-864 Affidavit of Support; (2) Mother's claim for *quantum meruit*/unjust enrichment should be granted for the funds Mother provided to finance the purchase of the Georgia rental home and awarded Mother $100,028 USD, the converted amount of the funds minus the payments Father made in 2013 and 2014, together with $33,697.10 USD in interest; (3) Mother's claim for attorney's fees arising out of the Affidavit of Support should be allowed in the amount of $20,000 USD; and, (4) both Mother and Father's claims for attorney's fees related to the child custody agreement should be denied.

*Pelc I*, 287 N.C. App. at 430-33, 883 S.E.2d at 637-38.

In *Pelc I*, this Court affirmed in part, reversed in part, and remanded the matter to the trial court. *Id.* at 430, 883 S.E.2d at 637. On remand, the trial court was instructed to "correct and convert Mother's equitable award from the loan amount" from U.S. Dollars into Australian Dollars, in accordance with N.C. Gen. Stat. § 1C-1823(b) (2023). *Id.* at 448, 883 S.E.2d at 648. The trial court was also instructed to recalculate the damages owed to Mother arising from the Affidavit of Support using the 125% of FPL Guidelines for a one-person household instead of those attributable to a two-person household. *Id.* at 447, 883 S.E.2d at 647-48.

The trial court held a hearing and entered its Order and Judgment from Remand Hearing on 3 May 2023. The order recalculated the amount of damages owed to Mother pursuant to the Affidavit of Support and her unjust enrichment claims and provided: "This Consent Order and Judgment shall be enforceable by the full contempt powers of this Court." Although the court referred to the order as a "Consent Order", it was only signed by the judge, and not the parties. There are also no findings indicating the parties had reached an agreement and requested the Court to enter an agreement they had reached as an order. This appears to be a misstatement by the Court, as nothing in the record supports this order having been derived from a consent agreement of the parties.

Sixteen days later, the trial court entered a separate order awarding reasonable attorney's fees to Mother. Both orders provided Father was to pay Mother within thirty days from the entry of the order.

Father did not pay Mother any of the money he was required to pay her. Mother filed a Motion for Contempt on 19 July 2023. The trial court issued a Show Cause Order on 21 December 2023, which notified Father a hearing would be held on 23 January 2024.

Father filed a Motion to Claim Exempt Property pursuant to N.C. Gen. Stat. §§ 1C-1601 and 1603 (2023). Father argued certain subsections of N.C. Gen. Stat. § 1C-1601 shielded portions of his house, motor vehicle, household furnishings, and his Australian Government Employees Superannuation Board ("GESB") account

from being used to satisfy the damages owed to Mother. Mother objected to Father's exemption.

A second Show Cause Order was filed on 29 January 2024, and a hearing was held on 6 March 2024. An Order of Civil Contempt was entered against Father on 4 April 2024. The trial court made the following findings of fact:

> 24. Plaintiff argued that he had certain property (for example, his house and his retirement account) that should be exempt from execution and/or exempt from consideration of his ability to pay. Defendant argued that this was a contempt proceeding and not a proceeding to execute on or seek a writ of execution on Plaintiff's property, that currently there is not a pending proceeding for a writ of execution under Chapter 1C of the North Carolina General Statutes, and that the contempt statute and contempt case law do not restrict the Court from considering all of Platiniff's income and assets in determining whether Plaintiff has the ability to comply with the Court's Orders.
>
> 25. The Court finds that Plaintiff's Motion to Claim Exempt Property as it pertains to this contempt proceeding should be denied.
>
> . . . .
>
> 41. As a result, Plaintiff has a current net estate of $473,600.00 in US Dollars.
>
> 42. As of March 6, 2024, Plaintiff owes the following amounts to Defendant:
>
> > (a) Affidavit of Support: $34,421.59 in US dollars principal plus interest
> > (b) Attorney Fees: $32,000.00 in US dollars
> > (c) Unjust Enrichment: $168,652.08 in AUD principal plus interest.

43. If Plaintiff were to pay Defendant what he owes her, he would still have several hundred thousand dollars left over in his estate.

. . . .

47. In spite of having the ability to pay Defendant from his GESB, he has willfully refused to do so.

48. Plaintiff's failure and refusal to abide by the terms of the Orders or to take reasonable measures to do so has been willful and without legal justification or excuse.

The trial court ordered Father to ninety days of imprisonment unless he "purge[d] himself of contempt by making full payment of all amounts" set forth in the Order from Remand and Order on Attorney's Fees.

Father appealed the Contempt Order on 6 May 2024. A second Show Cause Order was filed on 22 May 2024, which scheduled a hearing for 28 May 2024. A second contempt hearing was held, and Father was recommitted to an additional ninety days in prison unless he purged himself of contempt.

Father filed a Petition for Writ of *Supersedeas* and Motion for Temporary Stay before this Court on 18 June 2024. This Court allowed Father's motion on 27 June 2024 and stayed the contempt orders.

## II. Jurisdiction

"The appeal of any contempt order . . . affects a substantial right and is therefore immediately appealable." *Guerrier v. Guerrier*, 155 N.C. App. 154, 158, 574 S.E.2d 69, 71 (2002).

### III.    Issues

Father argues several issues on appeal.  He asserts the trial court erred by using a contempt proceeding, instead of an execution proceeding, to enforce its order, in violation of N.C. Gen. Stat. § 1-302 (2023).  He further argues the trial court improperly considered certain assets when calculating his ability to pay, arguing those assets would have been exempt property in an execution proceeding.  He also asserts the trial court's contempt order is not supported by competent evidence, because he does not have the ability to pay.

Lastly, Father argues the trial court's Order and Judgment from Remand Hearing, which was entered nearly one year before the Contempt Order, erroneously calculated the damages Father owes to Mother.

### IV.    Trial Court's Jurisdiction to Hold Father in Contempt

Father argues "the trial court has 'blended' for lack of a better word, the remedies associated with both a judgment and order, without legal authority."  He asserts enforcement of money judgments are generally governed by execution pursuant to N.C. Gen. Stat. § 1-302 (2023).

### A. Standard of Review

"Subject matter jurisdiction is conferred upon the courts by either the North Carolina Constitution or by statute."  *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987).  "The question of subject matter jurisdiction may be raised at any time, even in the Supreme Court."  *Lemmerman v. A.T. Williams Oil Co.*, 318

N.C. 577, 580, 350 S.E.2d 83, 85 (1986).

"'[I]t is a universal rule of law that parties cannot, by consent, give a court, as such, jurisdiction over subject matter of which it would otherwise not have jurisdiction.  Jurisdiction in this sense cannot be obtained by consent of the parties, waiver, or estoppel.'"  *Pulley v. Pulley*, 255 N.C.423, 429, 121 S.E.2d 876, 880 (1961) (quoting *Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 88, 92 S.E.2d 673, 676 (1956)), *appeal dismissed and cert. denied*, 371 U.S. 22, 9 L. Ed. 2d 96 (1962).  The record is devoid of evidence to indicate this order was an order entered as a result of an agreement by the parties.

"Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal."  *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

### B. Analysis

"Where a judgment requires the payment of money or the delivery of real or personal property it may be enforced in those respects by execution[.]"  N.C. Gen. Stat. § 1-302 (2023).  "[I]t has long been the general rule that 'judgment fixes the amount due, and execution—not contempt proceedings—issues if not paid.'"  *Brown v. Brown*, 171 N.C. App. 358, 361, 615 S.E.2d 39, 41 (2005) (quoting *Hildebrand v. Vanderbilt*, 147 N.C. 639, 642, 61 S.E. 620, 621 (1908)).

In *Brown*, this Court explained trial courts have an express statutory basis under N.C. Gen. Stat. § 50-13.4(f) (2023) to "enforce[e] judgments for child support

arrearage by contempt proceedings, under specified conditions[.]" *Id.* Because the trial court did not comply with those statutory conditions, the judgment was not enforceable by contempt. *Id.* at 362, 615 S.E.2d at 41. The trial court's award was vacated because the order was "not enforceable by contempt, and the trial court did not have jurisdiction to enter an order finding defendant in contempt." *Id.*

Imposition of contempt is also not the proper procedure and remedy to enforce a judgment entered with the consent of the parties, because a consent judgment is nothing more than an agreement and contract between parties. *See Ibele v. Tate*, 163 N.C. App. 779, 782, 594 S.E.2d 793, 795 (2004) ("As the consent order in this case essentially represents a contract between the parties, the court has no authority to exercise its inherent contempt power, and the parties have no right to grant or accept a power held only by the judiciary, which includes the potential for imprisonment.").

Here, as Defendant correctly argued, execution proceedings with statutory and lawful exemptions, not contempt proceedings, were the proper avenue for recouping damages owed to Mother under the judgment. *Hildebrand*, 147 N.C. at 642, 61 S.E. at 62.

Mother was not seeking child support arrearages from Father, but contractual damages owed to her from unjust enrichment claims and from Affidavit of Support claims, both of which are based in contract law. *See Pelc I*, 287 N.C. App. at 437, 442, 883 S.E.2d at 641, 644. As was held in *Brown* and *Ibele*, the trial court had no power to exercise its contempt power, and the contempt orders are vacated. *Brown*, 171

N.C. App. at 361-62, 615 S.E.2d at 41; *Ibele*, 163 N.C. App. at 782, 594 S.E.2d at 795. Mother is permitted to bring execution proceedings to recover the damages and fees owed to her from Father without prejudice. Because the trial court's contempt order is vacated, Father's remaining arguments about whether competent evidence existed to support its findings are moot.

## V. Collateral Attack

Father argues the interest owed for Mother's unjust enrichment claims in the 3 May 2023 order was improperly calculated. Father's argument and challenge is a collateral attack on an earlier order not before us on appeal and is without merit.

"A collateral attack is one in which a party is not entitled to the relief requested 'unless the judgment in another action is adjudicated invalid.'" *In re Webber*, 201 N.C. App. 212, 219, 689 S.E.2d 468, 474 (2009) (quoting *Clayton v. N.C. State Bar*, 168 N.C. App. 717, 719, 608 S.E.2d 821, 822 (2005) (citation and quotation marks omitted)). "'A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it.'" *Id.* (quoting *Reg'l Acceptance Corp. v. Old Republic Sur. Co.*, 156 N.C. App. 680, 682, 577 S.E.2d 391, 392 (2003) (citation and quotation marks omitted)). "Collateral attacks generally are not permitted under North Carolina law." *Id.* (citation omitted).

Father had the opportunity to appeal the 3 May 2023 order outlining the amount he owed to Mother and any interest calculations thereon, but he failed to do

so. Nearly one year after the entry of the 3 May 2023 order, Father appealed the trial court's 4 April 2024 contempt order. Father's argument acknowledges the validity of the 3 May 2023 order, as his arguments have largely centered on the trial court's inability to enforce the judgment through its contempt powers versus through execution. Father's arguments about the trial court's interest calculations in an un-appealed, final order are an impermissible collateral attack. *In re Webber*, 201 N.C. App. at 219, 689 S.E.2d at 474. We overrule and dismiss this argument.

## VI. Conclusion

The trial court had no jurisdiction to exercise its contempt power to compel compliance with a money judgment arising from a general breach of contract. The breach of contract issue was and is wholly separate from any domestic relations orders the court may have entered. The Court lacked authority to enter the contempt order, and the contempt order is vacated. *Brown*, 171 N.C. App. at 361-62, 615 S.E.2d at 41; *Ibele*, 163 N.C. App. at 782, 594 S.E.2d at 795. Mother is free to bring forth execution proceedings, subject to Defendant's statutory and lawful exemptions, to enforce the trial court's 3 May 2023 judgment without prejudice. Father's remaining arguments are moot or are an impermissible collateral attack and are dismissed. *In re Webber*, 201 N.C. App. at 219, 689 S.E.2d at 474. The order appealed from is vacated and remanded for further proceedings. *It is so ordered.*

VACATED AND REMANDED.

Judges CARPENTER and STADING concur.